**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **ADAM EDWARDS** | § | **CIVIL ACTION NO. 5:21-cv-00834** |
| ***Plaintiff*** | § | |
| | § | |
| **vs.** | § | **ORIGINAL COMPLAINT** |
| | § | |
| **STAT EMERGENCY CENTER, LLC** | § | |
| ***Defendant*** | § | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

NOW COMES, ADAM EDWARDS, M.D., Plaintiff, (hereinafter "DR. EDWARDS"), and files this Original Complaint against STAT EMERGENCY CENTER, LLC (hereinafter "STAT"), and would show as follows:

## I. JURISDICTION & VENUE

1. Plaintiff invokes this Honorable Court's jurisdiction pursuant to 42 U.S.C § 2000e, *et seq.*

2. The unlawful employment practices alleged herein were committed within the San Antonio Division of the Western District of the State of Texas.

## II. PARTIES

3. Plaintiff is a Jewish male American citizen of the United States and at all times relevant was a resident of Bexar County, Texas, in the Western District of Texas. He was employed by the Defendant at all times relevant to the allegations set forth in this Original Complaint, with regards to his discrimination and hostile work environment claim.

4. Defendant STAT is a corporation that is incorporated under the laws of the State of Texas, with over fifteen employees. Defendant has its principal place of business

in the State of Texas. Defendant STAT may be served with process by serving its registered agent, 14603 Huebner Road, Building 2, San Antonio, TX 78230, Attn: Dan Lonergan.

## III. ADMINISTRATIVE PROCEDURES

5. Plaintiff has complied with and exhausted all administrative remedies prior to filing suit. In particular, Plaintiff timely filed charges of discrimination and received a Right to Sue letter from the EEOC, in connection with the allegations of discrimination and retaliation contained in charge number 451-2021-01603. Upon receiving the Commission's Right to Sue Letter, DR. EDWARDS timely instituted her lawsuit based on the same claims. *See* attached hereto and incorporated by reference a true and correct copy of the Right to Sue issued by the EEOC on June 3, 2021, as Exhibit 1.

## IV. CLAIM FOR RELIEF: VIOLATION OF TITLE VII

6. STAT at its core based on a model of emergency physician operated clinics and most recently a hospital in the Laredo and Eagle Pass markets. DR. EDWARDS was at all times relevant and currently is an licensed board certified emergency care physician who is both an employee and B class shareholder of STAT. See attached hereto is a true and correct copy of the shareholder's agreement to which DR. EDWARDS joined as B class shareholder, as Exhibit 2.

7. While STAT is presumed to maintain – as it did with the EEOC in its response that EDWARDS was a mere independent contractor, with no badges of being an employee, at all times relevant, STAT controlled and dictated DR. EDWARDS's schedule, where he worked, under what conditions he was expected to perform his work, and how he worked as

he was required to comply with all STAT policies and policies with relation to emergency medicine and billing protocols, and provided him with bonuses based on the how the clinics where he was assigned in Laredo and Eagle Pass did on collections from insurance providers. Indeed Dr. Padron, the former medical director of STAT Laredo, but current director of Eagle Pass, repeatedly referred to Dr. Edwards and those of his class of physicians performing like services as partner/owners of STAT.

8. Dr. Edwards was the sole Jewish physician, employee/shareholder (owner) of STAT at all times relevant. The majority of physicians comprising STAT's body of emergency doctors were of a Hispanic background. Dr. Sebastian Padron, his reviewing supervisor and medical director, was Hispanic. In sharp contrast with any other physician who was not of Jewish descent, Dr. Edwards was routinely and systematically targeted by Padron, whose actions were known to the board and were ratified, sanctioned, and approved – due to its failure to cure or remedy the continuing pattern of harassment and discriminatory actions.

9. On information and belief, STAT followed a policy and practice of discrimination against Plaintiff, DR. EDWARDS, because of his race as Jewish, in violation of Title VII. The discriminatory practices and policies include, but are not limited to selective and discriminatory placement of the plaintiff in a work schedule where he was required to work back to back shifts of 24 hours or alternatively had to work rotating 24 hour shifts every other day as part of his agreement to work a shift for every share he had as an employee/shareholder of STAT, where others are allowed to plan their schedules as they see convenient, DR. EDWARDS was not allowed this convenience.

10. DR. EDWARDS was targeted, mocked and disparaged by Dr. Sebastian Padron when Dr. Edwards's mother unexpectedly died and under the Jewish tradition, the bodies must be buried within twenty-four hours of their death. Dr. Edwards requested permission to get off his shift such that he could obtain an emergency flight to New York and attend his mother's funeral. Dr. Padron lambasted Edwards for seeking leave to attend the funeral and after was faulted for going and was one of the inciting reasons for DR. EDWARDS dismissal as a director at Eagle Pass.

11. Unlike an other physician working at STAT, Dr. Padron targeted and unreasonably demanded and insisted on no less than three occasions that Dr. Edwards submit to psychological testing and evaluation as to his fitness to perform on behalf of the company. Dr. Edwards on each and every occasion that Padron made these requests under a thinly veiled threat of termination, if he refused to submit to the same, conceded to being subjected to these inquests. One such alleged basis for these psychological fitness for duty evaluations was Dr. Edwards consumption of caffeinated beverages and colas while working his 24 hour shifts. On each of the three psychological screenings done, there was no finding of Dr. Edwards being an endangerment to himself, staff or patients whom he would be attending.

12. Despite having one test affirmatively make this conclusion, Dr. Padron was undeterred in his quest to find grounds to displace and discredit Edwards. Indeed Dr. Edwards has been consistently one of the best rated physicians within the entire practice, through independent reviews posted by former patients of the clinics where Dr. Edwards has served. Here again, Dr. Padron in his efforts to dismantle and deconstruct unsolicited accolades given to Dr. Edwards, has repeatedly under stealth conditions sought to elicit and

harvest complaints against Edwards by other co-workers of the clinics by manufacturing and publishing false and defamatory allegations that Edwards allegedly was inappropriate with patients at the clinics. Although Patron's efforts to tarnish and discredit Edwards have been unfruitful in creating grounds for terminating, as they have never been substantiated by any staff that he has interviewed under such false pretenses, it has caused Edwards to suffer from acute embarrassment, anxiety and fear that anything he does or says will be used against him. It has also caused the overall morale within the clinics where he works to deteriorate by Padron's unsubstantiated infusion of gossip and conjecture.

13. Further, unlike any other physician within the STAT group of emergency doctors, who are not of Jewish descent, Padron completely sidestepped all of the company's controlling bylaws when he unilaterally stripped Edwards of shares that were assigned to him as a Class B level shareholder, with no authorization, due process or vote from any other board members. While the STAT board did not actively vote to terminate or purchase back Edwards' two shares he denied him of and correspondingly the pay for two 24 hour shifts along with bonuses based on profits at the Eagle Pass location, its silence and failure to cure Padron's abusive and unauthorized measure was deafening.

14. STAT's claim that Edwards and other similarly situated emergency physicians were independent contractors is a contrivance solely invented by STAT to circumvent and evade paying appropriate payroll taxes by creating a false shell company that acts as a conduit for paying Edwards and other like physicians, as well as to avert possible exposure to liability under employment discrimination, retaliation and harassment acts including but

not limited to Title VII. At all times relevant, STAT exercised control over the scheduling of DR. EDWARDS, what and how he was to perform his job assignment, provided him the equipment that he was required to use in the performance of his duties, and in all relevant aspects treated DR. EDWARDS as an employee/co-owner of STAT. STAT's attempts to shield itself from liability under Title VII, by characterizing him as an independent contractor, while dictating the terms and condition of employment as full fledged employed, covered under the Act are disingenuous.

15. The effect of such practices pursued by the Defendant as alleged above has been and continues to limit, classify, and discriminate against the Plaintiff, DR. EDWARDS, in ways which jeopardized his job and ultimately resulted in discriminatory acts, such as the termination of his shifts which deprived of substantial revenues he was entitled to continue to work and receive based on the total number of shares/24 hour shifts he worked. Notably, the location where STAT pulled Edwards' two shifts related to the Eagle Pass location, which recently opened a hospital, and where against the consent or approval of Edwards continued to use his lab director certification which is required to continue to operate the laboratory services there, for more than a year after he was removed from any schedules at the facility. Padron's unprecedented act of stripping Edwards of shares, equivalent to two shifts at the Eagle Pass location, has had the effect of causing him to be further deprived of employment opportunities in violation of 42 U.S.C. Section 2000e *et seq.*

16. As a further result of STAT's above-stated actions and omissions, the Plaintiff

has been and is being deprived of income in the form of wages and other benefits (including but not limited to distributions which STAT has paid other similarly situated physicians, who like Edwards it now seeks to claim are independent contractors) due to his being an employee and has been subjected to ongoing mental anguish because of Defendant's discriminatory and hostile environment actions in a sum to be proven at trial.

17. Defendant STAT has unlawfully discriminated against the Plaintiff by refusing to offer the Plaintiff a work environment free of prohibited race discrimination; failing to remedy discriminatory practices of its supervisory personnel complained of by Plaintiff; and otherwise ratifying a pattern of ongoing abuse and harassment by Padron against the Plaintiff on the basis of his race, as by every other metric of performance he has been repeatedly among the best rated physicians within the STAT group as protected under 42 U.S.C. §2000 *et seq*. Soon after Plaintiff filed his charge of discrimination, STAT mandated Edwards along with all other physicians to enter into an agreement whereby they would forfeit any rights to challenge or sue STAT and to cement their position as allegedly being only independent contractors – while still dictating the terms and conditions of their work.

18. Plaintiff further states that the actions and omissions of Defendant, its officers and agents directly and proximately caused him to suffer future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life giving rise to compensatory damages.

19. Plaintiff further states the knowing, intentional violation of his right to be free

of racially targeted harassment and deprivation of procedural remedies as part of his having his shares stripped of him in violation of the company's bylaw and corresponding loss of substantial wages therein, and/or reckless disregard of the same rights, culminating in disparate treatment and his ultimate loss status and rights as shareholder, subject STAT to punitive damages as may be awarded by a jury in conformity with his rights under the statute.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully moves this Honorable Court to:

1. Grant Plaintiff a permanent injunction enjoining Defendant, its officers, agents, successors, employees, attorneys, and assigns and other representatives, and all those persons acting in concert with them and at their discretion, from engaging in any employment policy and practice which discriminates or has subjected the Plaintiff to a hostile work environment because of the Plaintiff's protected race, Jewish, under 42 U.S.C. Section 2000e *et seq.*

2. Order Defendant to make whole the Plaintiff by providing appropriate back pay and reimbursement for lost pension, social security and other benefits in an amount to be shown at trial;

3. Order Defendant to further make whole the Plaintiff by providing his compensatory damages commensurate with the pain, suffering and emotional distress directly caused by the Defendant and its discriminatory employment practices, in an amount as determined at the time of trial;

4. Order Defendant to be charged with exemplary and compensatory damages as

a result of the willful, wanton or in the converse grossly negligent conduct and allegations of its agents, employees and servants giving rise to Plaintiff's emotional distress damages;

5. Order Defendant to be taxed with the cost of this action, including reasonable attorney's fees for Plaintiff, court costs, and expenses.

6. Grant such further and additional relief as to the Court may seem just and proper.

Respectfully submitted,

*/s/ Russell J. G. Amsberry*

Russell J. G. Amsberry
24165 IH 10 W. Ste. 217, #230
San Antonio, Texas 78257
Telephone: (210) 354.2244
Telecopier: (210) 729-0974
State Bar No. 00790028
Email: r.amsberry@amsberrylaw.com

ATTORNEY FOR PLAINTIFF
DR. ADAM EDWARDS